# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2262 | **DATE** | 12/13/2001 |
| **CASE TITLE** | Richard L. Ferren vs. National Railroad Passenger Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** For the reasons stated in the Memorandum Opinion and Order, plaintiff's motions in limine are granted and defendant's motions in limine are granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 12/13/2001 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| JJK | courtroom deputy's initials | JJK | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

01 DEC 13 PM 2:44

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD L. FERREN,       )
                                    )
         Plaintiff,         )
                                    )     No. 00 C 2262
vs.                             )
                                    )     Magistrate Judge Schenkier
NATIONAL RAILROAD PASSENGER   )
CORPORATION, a corporation,     )
                                    )
         Defendant.      )

DOCKETED
DEC 12 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action under Federal Employer Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, to recover for injuries he allegedly suffered while on the job on December 3, 1998. On October 17, 2000, by virtue of the consent of the parties pursuant to 28 U.S.C. § 636(c), the case was transferred to this Court for all proceedings, including the entry of final judgment. The case is set for a jury trial to commence on February 12, 2002. Presently before the Court are various motions *in limine* filed by each of the parties. The Court's rulings on each of these motions *in limine* are set forth below.

## I.

The plaintiff has filed five motions *in limine*, two of which are unopposed: plaintiff's motion *in limine* to bar any reference to plaintiff's prior accidents and/or injuries and unrelated medical conditions, and plaintiff's motion to bar any reference to the character of plaintiff's work abilities or habits. Those motions are granted. Plaintiff's other three motions *in limine* are opposed by defendant, in whole or in part, and thus require some discussion.

## A.

Plaintiff has moved *in limine* to bar any reference to all discipline ever imposed by the defendant railroad against plaintiff. The defendant does not object to this motion, with one exception. Subsequent to his injury and his return to work, plaintiff was discharged in August 2000 after being accused of sexually harassing fellow employees. Defendant argues that to the extent that plaintiff claims lost wages for the period subsequent to that discharge, defendant should be allowed to offer evidence that the lost wages were the result of disciplinary measures and not the accident.

The Court agrees with the defendant – although the possibility that defendant's expressed concern will in fact materialize seems remote based on the itemization of alleged damages set forth in the final pretrial order, which discloses no claim for lost wages after February 15, 2000. Thus, the Court will grant this motion *in limine*, and bar reference to any discipline assessed by the defendant railroad against the plaintiff. However, in the unlikely event that plaintiff is allowed to seek lost wages for a period of time subsequent to plaintiff's discharge, the Court will permit defendant to offer evidence that the lost wages were the result of the termination and not the accident.

## B.

Plaintiff also has moved to bar any reference to allegations that the plaintiff engaged in sexual harassment; plaintiff's current work status; or the pending administrative appeal of his discharge. Plaintiff argues that none of this evidence is relevant, and all of it could present the risk of unfair prejudice. Defendant offers no response to the unfair prejudice argument, and offers as the only theory of relevance that the evidence would show plaintiff's bias against the defendant.

The Court is not persuaded by the defendant's relevance argument. Plainly, the plaintiff is "biased" in that he has an interest in the outcome of the case: he is seeking to recover money from the defendant. In the Court's view, evidence that the plaintiff was terminated (after his return to work and after this lawsuit was filed) would be cumulative at best on the question of bias. Moreover, any marginal relevance that could be extracted from this evidence would be substantially outweighed by the risk of unfair prejudice and jury confusion. The unfair prejudice would stem from the risk that a jury, if convinced that plaintiff was a sexual harasser, would find him to be an unsavory person and thus would be less inclined to find in his favor for that reason, whatever the merits of his claim. The risk of confusion and waste of time stem from the fact that allowing evidence of plaintiff's termination for sexual harassment might lead to a "trial within a trial," with the plaintiff attempting to show why the sexual harassment accusation was incorrect and the defendant trying to prove the contrary – none of which would shed light on the issues presented by plaintiff's FELA claim.

Accordingly, the Court grants plaintiff's motion to bar reference to the allegations of sexual harassment or to plaintiff's termination based on the charges of sexual harassment. However, in line with the Court's ruling above, the Court will allow defendant to offer evidence that plaintiff was terminated from defendant's employ as of a certain date as a disciplinary measure, in the event that plaintiff is allowed to seek lost wages for the period of time subsequent to that termination.

## C.

Plaintiff has moved *in limine* to bar evidence of benefits received by plaintiff from collateral sources. In particular, plaintiff anticipates that defendant will seek to offer evidence that plaintiff's medical expenses have been paid by health insurance, and that he has received sickness benefits from

the Railroad Retirement Board. Defendant does not object to this motion, except to the extent that plaintiff may open the door by introducing evidence or argument that the cost of the medical bills caused plaintiff to suffer economic hardships.

The Court agrees with this exception posited by defendant. Plaintiff is correct that, as a general proposition, evidence of collateral source payments is inadmissible in FELA cases. *Eichel v. New York Central*, 375 U.S. 253 (1963). In that case, the defendant had offered evidence of Railroad Retirement Board payments to show a motive for the plaintiff not to return to work, even if he had fully recovered from his injuries. The Supreme Court did not find the evidence irrelevant for that purpose, but rather concluded that the relevance was clearly outweighed by the likelihood that the jury would misuse the evidence for an improper purpose: to offset or mitigate damages. 375 U.S. at 254-55. The Supreme Court reasoned that there "will generally be other evidence having more probative value and involving less likelihood of prejudice" on the question of a plaintiff's alleged "malingering" than on the receipt of disability payments. *Id.* at 255.

The *Eichel* ruling is thus based not on the lack of relevance of collateral source income, but rather on the potential for prejudice. As a result, courts generally have considered the exclusion of collateral source income not to be an absolute rule, but instead a determination that will turn on the particular facts of each case. *See McGrath v. Consolidated Rail Corp.*, 136 F.3d 838, 840-41 (1st Cir. 1998). That is in keeping with the general proposition that where evidence is relevant, the trial court has broad discretion in determining whether its probative value outweighs any possible prejudice. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 760 (7th Cir. 1994). In cases outside the specific FELA context, courts have struck the balance in favor of allowing collateral source payment evidence to impeach a plaintiff's testimony that he retired due to a disability rather than to receive a pension, *Brandt*, 30

4

F.3d at 760; to attack the credibility of a plaintiff's assertion that he suffered financial stress as a result of income loss after an accident, *Cowens v. Siemens-Elma AB*, 837 F.2d 817, 824 (8th Cir. 1998); and to cross examine a plaintiff who had testified that he had not visited a doctor again about an injury because he had fallen behind in payments of his bills. *Gladden v. P. Henderson & Co.*, 385 F.2d 480, 483 (3d Cir. 1967).

These cases all reflect that the limitation created by the collateral source rule has itself a significant limitation: "the barriers which have been created against the admission of otherwise relevant evidence because of its prejudicial affect do not extend to the affirmative volunteering by a plaintiff of testimony which breaks into the restricted area." *Gladden*, 385 F.2d at 485; *see also Cowens*, 837 F.2d at 824 ("we have recognized that a plaintiff's testimony on direct examination may make evidence of payments from a collateral source relevant and necessary for purposes of rebuttal") (cited with approval in *Brandt*, 30 F.3d at 760). Here, if plaintiff "opens the door" by suggesting to the jury that the costs of his medical bills have caused him to suffer economic hardship, then the Court will permit defendant to rebut that suggestion by offering evidence that those bills have been paid through health insurance and Railroad Retirement Board payments. Of course, in the event that plaintiff opens the door to this evidence, the Court will instruct the jury as to the limited purpose for which the evidence may be used.

Accordingly, the Court grants this motion *in limine*; however, if the plaintiff offers evidence that the costs of medical bills caused him to suffer economic hardship, defendant will be allowed to rebut that suggestion by presenting evidence that those medical bills have been paid through health insurance and Railroad Retirement Board payments.

## II.

We now turn to the defendant's motions *in limine*.

### A.

The defendant has moved *in limine* to bar three different opinions that plaintiff seeks to offer through its expert, Raymond Duffany: (1) that Amtrak failed to properly inspect and maintain the D2/D3 switch that plaintiff alleges was involved in the accident in a manner consistent with "generally accepted industry standards and practices"; (2) that after the accident, the investigation performed by the Amtrak Investigation Committee was not properly conducted; and (3) that plaintiff worked safely for 32 years prior to the accident in question. We address each of these challenges in turn.

### 1.

In his report, Mr. Duffany expresses the opinion that the defendant "failed to inspect and maintain its switch consistent with generally accepted industry standards and practices" (Pl.'s Resp. Ex. 3 ("Duffany Rep.") at 9). Defendant argues that this means that Mr. Duffany will offer the opinion that Amtrak should have inspected the switches more frequently, an opinion that defendant argues Mr. Duffany should not be able to offer. Defendant argues that pursuant to authority granted under the Federal Railroad Safety Act of 1970, ("FRSA"), 49 U.S.C § 20101, *et seq.*, the Secretary of Transportation has promulgated a regulation specifying that switches "shall be inspected on foot at least monthly." 49 C.F.R. § 213.235. Defendant asserts that this regulation under the FRSA "preempts" (or, more properly, supercedes) any claims under FELA that inspections had to be conducted more frequently, and that Mr. Duffany therefore should not be permitted to testify that in

his opinion "generally accepted industry standards and practices" required more frequent inspections (Def.'s Mem. at 1).

At the threshold, we note that in its response, plaintiff asserts that Mr. Duffany is not going to testify about the *frequency* of inspections, but rather that the quality of the inspections conducted was subpar (Pl.'s Resp. at 8). However, the statement of claims set forth by each party in the final pretrial order can be read as raising an issue concerning the frequency of inspections: the plaintiff has asserted that Amtrak was negligent "[i]n failing to inspect said switch when an inspection would have disclosed the inoperable and neglected condition of the switch" (Final Pretrial Order, at 2), and the defendant has asserted that plaintiff was negligent because he "failed to inspect the switch points as required" (*Id.*, at 3). Moreover, the general phrasing of Mr. Duffany's "failed to inspect" opinion is sufficiently open-ended that it could embrace a number of variations: (a) that no inspections took place at all; (b) that inspections took place, but less frequently than the monthly inspections required under the FRSA; (c) that inspections took place at least monthly, but should have been conducted more frequently; or (d) that the problem was not the frequency of inspections but rather their quality.

Defendant's argument that the FRSA supercedes the opinion Mr. Duffany intends to express would apply only to the third variation, and not the others. Thus, to the extent that Mr. Duffany intends to express any of those variations of the "failure to inspect" opinion, the Court denies this motion *in limine*.[1] However, to the extent that plaintiff seeks to use Mr. Duffany to sponsor an

---

[1] Defendant argues that the evidence will show that the switch in question was inspected at least monthly (Def.'s Mem. at 2). If true, of course, this would eliminate the factual underpinning for any opinion by Mr. Duffany that no inspections took place at all, or that the inspection regimen was insufficient because inspections occurred less frequently than once a month. However, we will await trial to see if the evidence offered is as advertised in the motion.

argument that inspections were inadequate because they did not occur more frequently than once a month, we agree with defendant that such a claim would be blocked by the FRSA.

FELA and the FRSA both share the goal of promoting railroad safety. *See Waymire v. Norfolk and Western Railway Co.*, 218 F. 3d 773, 775 (7th Cir. 2000) (noting that FELA imposes on railroads "a general duty to provide a safe workplace," and that the FRSA requires the Secretary of Transportation, as needed, to "prescribe regulations and issue orders for every area of railway safety"). The FRSA, enacted some 62 years after the passage of FELA, has the additional goal of promoting uniformity in the laws and regulations governing railroad safety. *Waymire*, 218 F.3d at 776. In *Waymire*, the Seventh Circuit held that a plaintiff in a FELA case could not assert claims of liability based on alleged unsafe speed and inadequate warning devices that were inconsistent with the FRSA regulations on those subjects. *Id.* at 775-76. For purposes of this case, we find particularly instructive the Seventh Circuit's treatment of the claim based on unsafe speed. *Id.*

In *Waymire*, the relevant FRSA regulation specified that the speed of the train could not exceed sixty miles per hour. The collision at issue occurred with the train traveling twenty to twenty-three miles per hour, which plaintiff argued was an unsafe speed in the circumstances. The Seventh Circuit drew on the decision in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993), in which the Supreme Court held that a state law negligence claim based on excessive speed was preempted by the FRSA speed regulations. The Seventh Circuit also considered the conflicting district court authority on whether FELA claims based on assertions of unsafe speed are superceded by the FRSA, and concluded that "in light of [the] FRSA's goal of uniformity and the Supreme Court's holding in *Easterwood*," a FELA negligence claim based upon the speed of the train is "superceded by FRSA and the regulations promulgated thereunder." 218 F.3d at 776.

We believe that in light of the FRSA regulation here prescribing that switch inspections must take place at least monthly, the rationale of *Waymire* applies to any claim under FELA that it was negligent for defendant to fail to inspect more often than once per month. Certainly, one might argue that even though the FRSA requires inspections at least once per month, specific circumstances in a given case might have required more frequent inspections. However, the *Waymire* court noted that this argument was specifically made by the plaintiff in *Easterwood*, who asserted that FRSA regulations prescribing maximum speeds were simply a ceiling and did not preclude an argument that lower speeds were negligent. The *Waymire* court explained that such an argument would arguably leave "room for railroad liability if the plaintiff could show the conditions favored lower speeds," but that this argument had been rejected by the *Easterwood* court. *Waymire* 218 F.3d at 776. The *Waymire* court found that reasoning persuasive when considering the interplay between the FRSA and FELA as respects speed limitations. *Id*. We see no reason that the same analysis would not apply here to the FRSA regulations concerning frequency of inspections.

Citing *Grimes v. Norfolk Southern Railway Co*, 116 F. Supp. 2d 995 (N.D. Ind. 2000) as his lead authority, plaintiff argues that the *Waymire* decision should not apply to the FRSA inspection regulation here, which plaintiff asserts presents "almost the same issue" as presented in *Grimes* (Pl.'s Resp. at 9). The Court disagrees. The specific FRSA regulations at issue in *Grimes* did not specifically address the negligence claimed by the plaintiff in that case. While there was an FRSA regulation specifying the speed to be used when using a vehicle to inspect when passing over crossings, the regulation was silent as to the speed to be used when inspecting areas between crossings, which was one area of negligence alleged by the plaintiff. And, the FRSA regulations were silent on the question of walkways to be used by employees inspecting rail cars, which was

another aspect of the negligence alleged. *Grimes*, 116 F. Supp.2d at 1002. On these facts, the *Grimes* court refused to extend the *Waymire* decision "well beyond its holding to preclude an negligence claim under FELA for any conduct by the railroad even remotely covered by a regulation enacted under FRSA." *Id.* at 1003. We do not quarrel with the proposition that for a FELA claim to be superceded, the FRSA must specifically address the conduct that plaintiff alleges is negligent. But contrary to plaintiff's suggestion, we believe that the FRSA regulation concerning frequency of inspections here, as the FRSA regulations at issue in *Waymire* and in contrast to those at issue in *Grimes*, specifically would cover a claim that the frequency of inspections was negligent.

All of this, of course, should not matter in this case, since plaintiff asserts in his memorandum that Mr. Duffany has no intention of offering an opinion that "defendant was negligent based upon the frequency of the switch inspection" (Pl.'s Resp. at 8). In any event, the Court hereby makes it clear that Mr. Duffany will not be permitted to offer an opinion that the failure to inspect more often than one time per month constitutes conduct that is negligent or outside "generally accepted industry standards and practices." To that limited extent, defendant's motion *in limine* is granted. But insofar as Mr. Duffany seeks to express opinions that no inspections or fewer than one inspection per month were conducted, or that the quality of the inspections were subpar, those opinions would not be barred by *Waymire*. Accordingly, to the extent that the motion *in limine* seeks to bar those other opinions based on *Waymire*, the motion is denied.

### 2.

Defendant seeks to bar Mr. Duffany from offering the opinion that the Amtrak Investigation Committee failed to perform a thorough investigation after the incident. Defendant argues that such an opinion would be irrelevant, because the issue to be decided by the jury is not the quality of

Amtrak's post-accident investigation but rather whether Amtrak's actions or inactions caused the claimed incident and injuries. Plaintiff argues that Mr. Duffany's opinions concerning the quality of the Amtrak post-accident investigation is relevant to Amtrak's defense, set forth in the Final Pretrial Order (Final Pretrial Order, at 2-3), that plaintiff caused or contributed to his own injuries by his own negligence (Pl.'s Resp. at 11). Plaintiff argues that the contributory negligence defense is based largely (if not exclusively) on Amtrak's post-accident investigation, and that evidence that the investigation was improperly conducted therefore would be relevant to that defense.

We agree with plaintiff on this point. We also agree that opinion testimony by Mr. Duffany concerning the quality of that investigation, and whether it was conducted in a way that such inspections normally are conducted in the industry, would assist the jury in assessing the credibility of the Amtrak post-accident investigation. Defendant argues that it is enough for plaintiff to cross examine the Committee members to test their conclusions, and that the jury "does not need an 'expert' to help them decide what weight to give the committee's conclusion" (Def.'s Mem. at 4. n. 2). Certainly, cross examination can establish what was done, or not done, in the investigation. But, Mr. Duffany's opinion may assist the jury in determining what a typical investigation in the industry would include and whether any omissions are significant. Thus, we believe the proposed testimony of Mr. Duffany meets the threshold standard of Federal Rule of Evidence 702 of being the type of information that would "assist the trier of facts to understand the evidence." Moreover, Amtrak offers no argument that Mr. Duffany is not an expert within the meaning of Rule 702, or that his opinions about the investigation fail to meet the other requirements of Rule 702. Accordingly, defendant's motion to bar Mr. Duffany's opinions concerning the Amtrak post-accident investigation is denied.

**3.**

Defendant also seeks to bar Mr. Duffany from testifying that "Mr. Ferren had apparently operated switches [of the type in issue] for over thirty-two years in a safe manner and there is no credible evidence in the record to indicate he violated any of the safety rules as outlined by the defendant in its investigation" (Duffany Report, at 9). Defendant argues that this opinion would be an improper effort to suggest to the jury that because plaintiff allegedly had a 32-year history of working safely, it is more likely than not that he was working safely at the time of the accident (Def.'s Mem. at 4). Plaintiff disavows any intent to offer an opinion that plaintiff's "general care in the past renders his conduct at the time of the accident non-negligent" (Pl.'s Resp. at 12). Plaintiff instead argues that Mr. Duffany's opinion is relevant for other purposes.

Insofar as Mr. Duffany seeks to offer the opinion that plaintiff did not violate any safety rules in connection with the accident, that opinion certainly would be relevant to address Amtrak's defense that plaintiff was contributorily negligent. So long as Mr. Duffany has a sufficient basis under Rule 702 to offer an opinion on that subject (and Amtrak's papers do not suggest otherwise), he may offer the opinion that plaintiff was not negligent in the ways that defendant alleges.

However, plaintiff has offered no explanation of the relevance of any opinions concerning plaintiff's alleged faithfulness to safety rules during the prior 32 years of his employment. The only purpose that we can see for such an opinion is to suggest that plaintiff's track record of safe conduct suggests that he was also conducting himself safely at the time that of the accident – which is, of course, the impermissible purpose that plaintiff has renounced. On this point, we agree with the defendant, and therefore grant defendant's motion to bar Mr. Duffany from offering the opinion that

Mr. Ferren had operated switches of the type involved in the accident for more than 32 years in a safe manner.

**B.**

Defendant has moved *in limine* to bar plaintiff from offering evidence that there were defects in switches other than the switch involved in plaintiff's alleged injury. Defendant argues that to establish liability, plaintiff must show that defendant had notice of a defect in the particular D2/D3 switch at issue, and that notice of alleged defects in other switches would be irrelevant and unduly prejudicial to defendant. Plaintiff argues that evidence of other switches would be highly relevant to show notice, on the theory that defendant's knowledge of defects in other switches would have provided defendant with at least constructive notice of the dangerous condition in the switch involved here (Pl.'s Resp. at 12-13).

Plaintiff is correct that "actual or constructive knowledge of the hazard is an essential element of a plaintiff's cause of action" under FELA. *Williams v. National Railroad Passenger Corporation*, No. 96 C 8637, 1997 WL 754175, * 3 (N.D. Ill. Nov. 20, 1997), aff'd, 161 F.3d 1059 (7th Cir. 1998). Evidence of defects in other switches might be relevant to the question of notice, but only if they pertain to the specific type of switch in question (the D2/D3 switch) and if the defect involved the same problem alleged here (that ballast had been deposited in the switch point area). If these two conditions were met, then the evidence not only would be relevant, but in the Court's view its probative value on the question of notice would outweigh any arguable prejudice from the admission of that evidence.

However, at this point, plaintiff has not offered evidence that these conditions are met: plaintiff argues that evidence of "the condition of other switches in defendant's yard" should be

admitted, without specifying whether they were the same types of switch in issue here or whether the condition of those other switches was the same condition that is alleged to be defective here. Accordingly, defendant's motion *in limine* to bar evidence of other defective switches is granted. However, at trial, the Court will give plaintiff an opportunity, outside the presence of the jury, to explain the evidence it would offer to show that these conditions may be met; if the evidence would be sufficient to support a finding where these conditions are met, then the Court will allow evidence of defects in other switches that meet these two conditions.

## C.

Defendant has moved *in limine* to bar the plaintiff from offering evidence or arguing that pain and suffering, disability, loss of enjoyment, loss of a normal life, and loss of vitality are separate damages claims. Defendant argues that damages for loss of enjoyment, a normal life, and vitality are subsumed within pain and suffering, and are not separate and independent elements of damages. Plaintiff does not quarrel with that proposition, and does argue that he should be able to assert separate and distinct claims for each of those species of damages. Rather, plaintiff argues that he should not be barred from offering evidence concerning these matters, since these are part of the damage she alleges he has suffered from the accident (Pl.'s Resp. 1-2).

Both sides are correct. Plaintiff will be allowed to offer evidence concerning the extent and nature of his pain and suffering, which certainly could include evidence of loss of a normal life. On the other hand, defendant is correct that loss of a normal life is not a separate and independent claim for damages. Accordingly, the Court will grant defendant's motion *in limine* insofar as it seeks to bar plaintiff from offering evidence or argument that the claims for loss of a normal life (or loss of enjoyment and vitality) are separate claims. However, the motion is denied insofar as it seeks to bar

the plaintiff from offering evidence and argument that his pain and suffering damages include those items. As for defendant's request concerning the jury instructions on this matter, the Court will address that question at the instruction conference.

## D.

Defendant has moved *in limine* to bar plaintiff from offering evidence or making any statement or argument to the jury that (1) FELA is the plaintiff's sole remedy; (2) the plaintiff is not eligible for workers' compensation benefits; and (3) the congressional intent behind FELA was to allow a plaintiff to recover more easily than in a common law matter. Once again, there does not seem to be much true disagreement between the parties on this motion. Plaintiff states that he has no objection to an order barring him from arguing that FELA is plaintiff's sole remedy or that he is ineligible for workers' compensation benefits, and from making any reference to the congressional intent behind FELA (Pl.'s Resp. at 2). Accordingly, this motion is granted. However, this ruling will not bar plaintiff (or, for that matter, defendant) from arguing to the jury the burden of proof, so long as that argument is consistent with the jury instructions that the Court ultimately decides to give.

## E.

Defendant has filed an omnibus motion *in limine* regarding "general matters." Several of those general matters – defendant's request to bar testimony or evidence regarding (1) defendant's net worth, corporate earnings or punitive damages; (2) defendant's size, corporate status, power or wealth; and (3) settlement discussions – are unopposed, and therefore are granted without further discussion. The remaining portions of this omnibus motion *in limine* are contested in whole or part, and are decided below.

15

**1.**

Defendant seeks to bar any testimony suggesting that the defendant is insured, or suggesting that the plaintiff does (or does not) possess medical insurance. Plaintiff does not object to this motion insofar as it seeks to bar reference to defendant's insurance status. However, plaintiff asserts that he should be allowed to offer evidence of loss of insurance coverage to the extent that that is part of the fringe benefits included in his lost wages claim.

Under Federal Rule of Evidence 411, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." This rule was adopted to address the concern that "knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." Advisory Committee Notes to Federal Rule of Evidence 411; *see also Buttron v. Sheehan*, 2001 WL 111028, at * 4 (N.D. Ill. Feb. 2, 2001); *DFC Communications Corp. v. Eames*, 929 F. Supp. 239, 242 (E.D. Tex. 1996).

However, Rule 411 provides that evidence of insurance against liability is not excluded when offered for another purpose. *See, e.g., PostTape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751, 758 (3d Cir. 1976); *Braun v. Lorillard, Inc.*, No. 94 C 976, 1996 WL 14033, at * 1 (N.D. Ill. Jan. 11, 1996). In this case, evidence that medical insurance was part of the fringe benefits that plaintiff claims to have lost is relevant for just such another purpose: establishing his alleged damages. Moreover, allowing evidence of plaintiff's alleged loss of medical insurance would not implicate the concerns that Rule 411 was adopted to address, since it would not tempt a jury to decide the case on the improper ground that defendant is a deep (insured) pocket. Indeed, a case can be made –

although plaintiff does not attempt to do so – that Rule 411 does not apply here at all, since this portion of the motion is not directed to insurance against liability but rather medical coverage.

For these reasons, defendant's motion *in limine* is granted insofar as it seeks to bar plaintiff from arguing to the jury that defendant was or was not insured against liability; the motion is denied insofar as it seeks to bar plaintiff from offering evidence of the fringe benefits he lost when he was unable to work due to his injury.

## 2.

Defendant seeks to bar plaintiff from offering evidence of his character. Plaintiff does not object to this motion, but seeks to reserve the ability to offer character evidence to "rebut any testimony proffered by defendant's witnesses" (Pl.'s Resp. at 3).

Under Federal Rule of Evidence 404(a), evidence of a person's character is not admissible for the purpose of proving that he acted in conformity with that character trait on a particular occasion. Rule 608 provides a limited exception to that Rule: it provides that evidence of a truthful character is admissible "if the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." However, we note that not just any attack on the credibility of particular testimony is sufficient by itself to trigger Rule 608: the "mere fact that a witness is contradicted by other evidence in the case does not constitute an attack upon his reputation for truth and veracity." *United States v. Jackson*, 588 F.2d 1046, 1055 (5th Cir. 1979). To bring the exception in Rule 608 into play, the attack must not be merely on the truthfulness of the particular testimony, but rather on the character of the witness for truthfulness.

Accordingly, defendant's motion *in limine* barring plaintiff from offering testimony regarding plaintiff's character is granted; however, in the event that defendant opens the door by attacking

plaintiff's character for truthfulness, plaintiff will be able to offer in rebuttal evidence of a character for truthfulness.

**3.**

Defendant seeks to bar statements by plaintiff as to what he may have been told by various doctors concerning his medical condition, arguing that such testimony would be inadmissible hearsay. Plaintiff argues that statements made by the physicians would be admissible under Federal Rule of Evidence 803(3), "because these statements go to plaintiff's state of mind in electing to undergo the medical treatment he received, such as physical therapy and surgery" (Pl.'s Resp. at 4).

We do not find persuasive plaintiff's citation to Rule 803(3). That Rule creates an exception to the hearsay rule for a "statement of the *declarant's* then existing state of mind" Rule 803(3) (emphasis added). As for the testimony that plaintiff may wish to offer concerning statements made by plaintiff's doctors, the doctors (not plaintiff) would be the declarant, and their individual states of mind would be irrelevant.

Plaintiff also cites to *Moss v. Feldmeyer*, 979 F.2d 1454 (10th Cir. 1992), to support his assertion that statements by plaintiff's physicians should be admissible. *Feldmeyer* involved a suit between the plaintiff/patient and the defendant/doctor, alleging that the death of plaintiff's decedent was caused by the defendant's negligence and misdiagnosis. In that case, the testimony at issue was directly relevant to resolve the dispute concerning the relationship between the physician and the patient, and the testimony concerning what the decedent allegedly said was plainly relevant to establishing her state of mind and what she did in response to the advice of the physician. In those circumstances, the court found that "the challenged testimony was a continuum of the

physician/patient relationship and admissible under both Fed. R. Evid. 803(3) and (4)." *Feldmeyer*, 979 F.2d at 1462.

In this case, by contrast, there is no dispute presented here between plaintiff and his treating physicians. Unlike the case in *Feldmeyer*, Rule 803(4) does not apply here. In that case, the doctor was allowed to testify concerning statements made by the patient for the purposes of medical treatment; in this case, by contrast, plaintiff seeks to offer not his statement to the doctors but rather what the doctors said to him. Accordingly, we find that *Feldmeyer* does not support the plaintiff's effort to admit through plaintiff (or other witnesses) what he was told by his doctors.

For these reasons, the Court grants this motion *in limine*. We note that this ruling should not limit plaintiff in his ability to establish the nature of his injuries, as he has identified in the pretrial order two doctors who will testify at trial on his behalf, and six other doctors and three physical therapists who also may testify on his behalf.

### F.

Defendant has moved *in limine* to bar evidence of plaintiff's medical bills. Defendant argues that the bills were paid by a group insurance policy as required under collective bargaining agreement, and thus are not properly included in damages. *Varhol v. National Railroad Passenger Corp. d/b/a Amtrak*, 909 F.2d 1557, 1565 (7th Cir. 1990). In addition, defendant argues that the medical bills are inadmissible to show the extent of plaintiff's injuries. *Varhol*, 909 F.2d at 1566.

We agree with defendant's argument, and so does plaintiff – with one exception. Plaintiff argues that he should be allowed to offer evidence of any medical bills either that he has paid personally (and presumably for which he has not been reimbursed), and which remain outstanding. We agree with that exception. Accordingly, we grant defendant's motion *in limine* to bar evidence

of medical bills that have been paid through insurance policies. This order does not bar plaintiff from offering evidence of medical bills that he has paid personally (and for which he has not received or claimed reimbursement through insurance), or which remain outstanding and unpaid (and for which no insurance coverage exists).

### G.

Defendant has moved to preclude plaintiff from seeking to recover gross lost wages. Plaintiff agrees that federal and state taxes (which the Court considers would include social security tax) should be excluded, but objects to the other reductions which defendant argues must be made.

Defendant argues that plaintiff should be required to reduce from his calculation of lost wages railroad retirement tax payments that the defendant says plaintiff did not have to make during the period he did not work due to his injury. However, plaintiff has cited a provision of the tax code that indicates that payments made to an employee in a personal injury action are subject to railroad retirement taxes, to the extent that the payments are for time lost (as opposed to other factors, such as pain and suffering). Plaintiff acknowledges that if he receives an award of lost wages for his injuries, he will be responsible for paying railroad retirement taxes on that amount. Given this concession, we see no reason to require plaintiff to exclude railroad retirement taxes from the lost wages contribution.

Defendant further argues that plaintiff should be required to reduce from lost wages payments for union dues, transportation expenses and special clothing or safety equipment which he did not have to expend due to his absence from work during the period of his injury. Plaintiff did not respond to this aspect of the motion, but none of the cases that defendant cites speak to the issue of deducting these kinds of items from gross income. Accordingly, the Court will not require plaintiff

to deduct these items from his lost wages calculation; however, defendant will be free to cross examine plaintiff on these matters to establish that the lost wage calculation is inflated.

Finally, defendant argues that the lost wage calculation must be reduced to present cash value. Again, plaintiff does not respond to this argument, but in the Court's judgment, plaintiff does not need to do so. All of the lost wages that plaintiff claims accrued between December 3, 1998 and February 15, 2000. Thus, all the lost wages at issue in this case are *past* lost wages. Reduction to present value is relevant only when the issue is *future* lost wages. Accordingly, this portion of defendant's motion is denied.

## H.

Defendant has moved *in limine* to bar plaintiff from claiming that he lost contributions to his 401(k) account. Defendant's theory is that 401(k) contributions are made by deducting a certain amount from a plaintiff's gross wages, and are not paid by Amtrak on top of gross wages. According to the defendant, plaintiff already is seeking to recover any amounts that would have been contributed to a 401(k) fund by seeking lost wages, which would include his 401(k) contributions. Defendant thus argues that any separate request for recovery of 401(k) contributions would be a double recovery.

Plaintiff argues that this is not the case, and a copy of a W2 statement for 1997 that he submitted with his memorandum in opposition to this motion appears to support his position. The W2 statement contains a separate box listing wages, tips and other compensation, and contributions to the 401(k), and then totals those together in another box to come to a total "tier 1 wage." Accordingly, based on the information submitted by the parties, the Court denies defendant's motion *in limine*.

**J.**

Defendant has moved *in limine* to bar claims for lost vacation pay and lost productivity pay. The Court has considered the parties' arguments on this point, and believes that plaintiff has the better of the issue. Accordingly, defendant's motions to bar plaintiff from offering evidence of lost wages and lost productivity pay are denied. However, that ruling is without prejudice to defendant offering evidence, should it so choose, to support its interpretation of the lost wage and lost productivity rules.

**K.**

Defendant has moved *in limine* to bar plaintiff from offering evidence concerning lost wages for the time period that he did not work due to a surgery that plaintiff claims is unrelated to the accident at issue. Defendant asserts that in November 1999, plaintiff was put on a work hardening program to prepare him to return to work. Defendant argues that this program was interrupted in December 1999, when plaintiff missed his work hardening sessions for that month because he underwent surgery to correct a sleep apnea problem that was unrelated to the accident. Defendant argues that had he not missed this month of work hardening, plaintiff would have been able to return to work as of January 1, 2000 rather than February 1, 2000, and that as a result, plaintiff's lost wages claim should be reduced by that four week period.

Plaintiff argues that defendant's position is based on speculation, and that no competent proof has been elicited during discovery to establish that plaintiff was delayed in his ability to return to work because of the sleep apnea surgery. Each side has argued what the evidence will show on this point, without offering materials from the discovery record to support their contentions. Based on the state of the current record, the Court will deny defendant's motion to bar evidence of lost wages

for the period of his surgery and convalescence for the sleep apnea; however, this ruling is without prejudice to defendant's right to offer evidence to attempt to establish that, but for the sleep apnea, plaintiff could have returned to work earlier than February 1, 2000.

## CONCLUSION

For the foregoing reasons, the Court rules as follows on the motions *in limine*:

**PLAINTIFF'S MOTIONS *IN LIMINE*.**

1.     Plaintiff's motion *in limine* to bar any reference to plaintiff's prior acts and/or injuries in unrelated medical conditions is GRANTED.

2.     Plaintiff's motion *in limine* to bar any reference to the character of plaintiff's work abilities or habits is GRANTED.

3.     Plaintiff's motion *in limine* to bar any reference to all discipline ever imposed by the defendant railroad is GRANTED; however, in the unlikely event that plaintiff is allowed to seek lost wages for a period of time subsequent to plaintiff's discharge, the Court will permit defendant to offer evidence that lost wages were the result of the termination and the accident.

4.     Plaintiff's motion *in limine* to bar any reference to allegations that the plaintiff engaged in sexual harassment, plaintiff's current work status, or the pending administrative appeal of plaintiff's discharge is GRANTED; however, the Court will allow defendant to offer evidence that plaintiff was terminated from defendant's employ as of a certain date as a disciplinary measure in the event that plaintiff's allowed to seek lost wages for the period of time subsequent to that termination.

5.     Plaintiff's motion *in limine* to bar evidence of benefits received by plaintiff from collateral sources is GRANTED; however, if plaintiff opens the door by offering evidence that the

costs of medical bills caused plaintiff to suffer economic hardship, defendant will be allowed to offer evidence that the medical bills have been paid through health insurance and railroad retirement board payments.

**DEFENDANT'S MOTIONS *IN LIMINE*.**

1.      Defendant's motion *in limine* regarding opinions by Raymond Duffany is GRANTED in part and DENIED in part, as follows:  (a) as to Mr. Duffany's opinion that Amtrak failed to properly inspect and maintain the D2/D3 switch that plaintiff alleges was involved in the accident in a manner consistent with "generally accepted industry standards and practices," the motion is GRANTED only insofar as Mr. Duffany seeks to express the opinion that any failure to inspect more than once per month constitutes negligent conduct; (b) the request to bar Mr. Duffany from offering the opinion that the Amtrak Investigation Committee did not properly conduct the post-accident investigation is DENIED; and (c) defendant's request to bar the opinion that plaintiff worked safely for thirty-two years prior to the accident is GRANTED.

2.      Defendant's motion *in limine* to bar plaintiff from offering evidence of defects and switches other than the switch involved in plaintiff's injury is GRANTED, without prejudice to plaintiff attempting to make a showing – outside the presence of the jury – of the conditions that would make such evidence relevant.

3.      Defendant's motion *in limine* to bar plaintiff from offering evidence or argument that loss of normal life, enjoyment of life, and vitality are separate and independent claims is GRANTED; however, this ruling will not bar plaintiff from offering evidence and argument that his damages or pain and suffering include those items.

4.     Defendant's motion *in limine* to bar plaintiff from offering evidence or arguing that FELA is plaintiff's sole remedy, that plaintiff is not eligible for worker's compensation benefits, and that the congressional intent behind FELA was to allow a plaintiff to recover more easily than in a common law matter is GRANTED; however, this ruling will not bar the parties from arguing the burden of proof to the jury, so long as the argument is consistent with the Court's instructions.

5.     Defendant's motion *in limine* regarding "general matters" is GRANTED in part and DENIED in part, as follows:  (a) defendant's request to bar testimony regarding defendant's net worth, corporate earnings or punitive damages is GRANTED; (b) defendant's request to bar evidence regarding defendant's size, corporate status, power or wealth is GRANTED; (c) defendant's motion *in limine* to bar evidence of settlement discussions is GRANTED; (d) defendant's motion to bar evidence regarding insurance is GRANTED insofar as it seeks to bar evidence of defendant's insurance status, and is DENIED insofar as it seeks to bar plaintiff from offering evidence of the fringe benefits he allegedly lost when he was unable to work due to his injury; (e) defendant's request to bar plaintiff from offering evidence of plaintiff's character is GRANTED; however, in the event that defendant opens the door by attacking plaintiff's character for truthfulness, plaintiff will be able to offer in rebuttal evidence of a character for truthfulness; and (f) defendant's request to bar statements by plaintiff as to what he may have been told by various doctors concerning his medical condition is GRANTED.

6.     Defendant's motion *in limine* to bar evidence of plaintiff's medical bills is GRANTED with respect to medical bills that have been paid through insurance policies; this order does not bar plaintiff from offering evidence of medical bills that he has paid personally (and for

which he has not received or claimed reimbursement through insurance), or which remain outstanding and unpaid (and for which no insurance coverage exists).

7.      Defendant's motion *in limine* to preclude plaintiff from seeking to recover gross lost wages is GRANTED insofar as it requires a redact in lost wages to account for federal and state taxes; in all other respects, the motion is DENIED.

8.      Defendant's motion *in limine* to bar plaintiff from claiming that he lost contributions to his 401(k) account is DENIED.

9.      Defendant's motion *in limine* to bar claims for lost vacation pay and lost productivity pay is DENIED.

10.      Defendant's motion *in limine* to require plaintiff to reduce his lost wage claim to account for the period that he underwent surgery and convalescence for a sleep apnea condition is DENIED.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

Dated:  December 13, 2001